UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETHE ODISIAN,<br><br>              Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>              Defendant. | Case No. CV 12-9521-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On November 15, 2012, plaintiff Elizabethe Odisian filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly rejected the opinions of plaintiff's treating physicians; (2) whether the ALJ properly discounted plaintiff's credibility; and (3) whether the ALJ properly determined plaintiff's residual functional capacity ("RFC"). Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-13. Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-11.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ: improperly rejected the opinions of plaintiff's treating physicians; improperly discounted plaintiff's credibility; and failed to properly consider the opinions of plaintiff's treating physicians in her RFC determination. Therefore, this court remands the matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was thirty-nine years old on the date of her June 20, 2011 administrative hearing, is a high school graduate. AR at 44, 47, 135, 145. Her past relevant work was as a cashier/checker and assistant manager. *Id.* at 33.

On December 22, 2009, plaintiff filed an application for a period of disability and DIB due to severe depression, anxiety, irritability, difficulty sleeping, panic attacks, physical pain, and difficultly concentrating. *Id.* at 135, 139. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 71-76, 78-82, 84-85.

On June 20, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 44-62. The ALJ also heard testimony from

Jane Hagen, a vocational expert. *Id*. at 59-61. On July 6, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 24-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, October 8, 2008. *Id.* at 26.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: depression and low-average intellectual functioning. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 28.

The ALJ then assessed plaintiff's RFC,[1] and determined that she had the RFC to perform a full range of work at all exertional levels but limited to simple repetitive tasks involving no more than limited contact with the general public. *Id.* at 29.

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work as a cashier/checker and assistant manager. *Id.* at 33.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including hand packager, cleaner, and laundry laborer. *Id.* at 34. Consequently, the ALJ concluded that

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 34-35.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

4

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.  The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinions of the Treating Physicians**

Plaintiff argues that the ALJ improperly rejected the opinions of his treating physicians, Dr. Anthony E. Reading and Dr. Thomas A. Curtis.[2] P. Mem. at 4-8. Specifically, plaintiff contends that the ALJ's reasons for rejecting Dr. Reading's and Dr. Curtis's opinions were not specific and legitimate. *Id.* The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*,

---

[2] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. § 404.1513(a)(2). Accordingly, for ease of reference, the court will refer to Dr. Reading as a physician.

80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. Dr. Anthony E. Reading

Dr. Reading, a psychologist at UCLA Medical Center, treated plaintiff on 31 occasions from October 13, 2008 through December 15, 2009. AR at 318-23. Dr. Reading diagnosed plaintiff with: adjustment disorder with mixed anxiety and depressed mood; and major depressive disorder, single episode, moderate to severe without psychotic features. *Id.* at 328. Dr. Reading assigned a global assessment of functioning ("GAF") score of 48.[3]

---

[3] A GAF rating of 41-50 indicates "[s]erious symptoms . . . *or* any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job, cannot work)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000) ("DSM").

In a report dated October 9, 2009, Dr. Reading wrote a brief synopsis, on average of three to four sentences, of each visit.[4] *Id*. at 319-23. Each synopsis primarily reflected plaintiff's reports of her symptoms. *Id.* Dr. Reading did not attach the actual treatment notes. Dr. Reading also discussed the mental status examination and the various psychological tests he employed. *Id*. at 325-28. Dr. Reading noted that plaintiff was cooperative, responsive, established appropriate eye contact, had clear speech, and was oriented at the examination. *Id.* at 325. Dr. Reading also reported that plaintiff was often tearful and agitated, she had poor concentration, her cognitive functioning was often disorganized, and her test scores on four psychological tests showed elevated scores in a number of categories including depression and anxiety. *Id.* at 325-28.

In a Mental Disorder Questionnaire Form, dated July 12, 2010, Dr. Reading wrote that plaintiff had a depressed mood that interfered with her daily activities and that she was also anxious. *Id.* at 314-15. Dr. Reading also indicated that plaintiff had poor grooming, was unable to perform household chores, was fearful of leaving her house, and had poor concentration. *Id.* at 316-17.

### 2. **Dr. Thomas A. Curtis**

Dr. Curtis, a psychiatrist, treated plaintiff from January 14, 2009 through at least February 8, 2012. *Id*. at 445, 449. Dr. Curtis began treating plaintiff in response to a worker's compensation claim. *Id.* at 252.

In a Permanent and Stationary Report, dated September 24, 2009, Dr. Curtis diagnosed plaintiff with depressive disorder not otherwise specified with anxiety, post-traumatic reaction, and panic attacks, and assigned a GAF score of 47. *Id.* at 423. Dr. Curtis based his diagnosis on his consultations, mental status

---

[4] Dr. Reading's opinion was dated October 9, 2009, but this appears to be a typographical error as he discussed appointments occurring after that date. AR at 319, 323.

examination, and psychological tests. *Id.* at 416-23. Dr. Curtis noted subjective feelings of frustration and depression and objective factors such as sobbing and a "sad affect" at the clinical visits. *See, e.g., id.* at 368-69. During the mental status examination, Dr. Curtis observed that, inter alia, plaintiff had distressed speech, had a markedly depressed facial expression, demonstrated diminished cognitive functioning, and had concentration, attention, and short-term memory deficits. *Id.* at 416. The psychological tests results showed that plaintiff had multiple elevated scores on numerous scales, including negative impression, depression, and anxiety. *Id.* at 417-23.

Dr. Curtis also completed a Mental Residual Capacity Questionnaire, dated February 8, 2012.[5] *Id.* at 445-49. Dr. Curtis identified the signs and symptoms supporting his diagnoses and opined that plaintiff would be unable to meet competitive standards in almost all of the categories of mental abilities and aptitudes to do unskilled work, semiskilled, and skilled work. *Id*. at 447-48.

### 3. **Dr. Steven I. Brawer**

Dr. Brawer, a consultative psychologist, examined plaintiff on June 8, 2010. *Id.* at 278-83. Dr. Brawer observed that plaintiff had clear speech and an adequate attention span. *Id.* at 280-81. Dr. Brawer performed an intelligence and memory test on plaintiff and determined that she had low average intelligence and memory. *Id.* at 281-82. Based on the examination, Dr. Brawer diagnosed plaintiff with depressive disorder, not otherwise specified. *Id*. at 282. Dr. Brawer opined that plaintiff "would be able to learn a simple, repetitive task and would be able to perform some detailed, varied, or complex tasks." *Id.* at 283.

---

[5] The questionnaire was completed after the ALJ issued her decision and was submitted with plaintiff's request for review to the Appeals Council.

8

### 4. **Dr. R. Tashjian**

Dr. Tashjian, a State Agency physician, reviewed Dr. Brawer's and Dr. Curtis's opinion. *Id.* at 284-97. Dr. Tashjian opined that plaintiff would be moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. *Id.* at 284-85. Dr. Tashjian further opined that plaintiff could perform simple repetitive tasks. *Id.* at 286.

### 5. **The ALJ's Findings**

In reaching his decision, the ALJ rejected the opinions of both Dr. Reading and Dr. Curtis on the grounds that the opinions were unsupported by the record as a whole and were based on plaintiff's subjective allegations. *Id.* at 31-32. The ALJ also specifically rejected Dr. Reading's opinion because there was no evidence that he was a treating source and Dr. Curtis's opinion because he was retained in relation to plaintiff's worker's compensation claim. *Id.* at 31. None of these reasons were supported by substantial evidence.

First, the ALJ rejected both treating physicians's opinions because their assessments were incompatible with the record as a whole. *Id.* at 31-32. The ALJ found that the opinions were inconsistent with the record because plaintiff did not require inpatient psychiatric care or intensive outpatient therapy, performed well on mental status testing, showed no signs of psychosis, and showed no signs of significant behavioral and cognitive deficits. *Id.* Inconsistency with the medical record is a specific and legitimate reason for rejecting an opinion. *See Magallanes*, 881 F.2d at 751-54 (affirming rejection of physician's opinion because it was inconsistent other medical evidence). But here, substantial evidence does not support the ALJ's reasons.

9

1    The ALJ correctly noted that plaintiff did not require inpatient psychiatric care or intensive outpatient therapy, but that alone is insufficient to find her not disabled. *See, e.g., Kuharski v. Colvin*, No. 12-1055, 2013 WL 3766576, at *5 (E.D. Cal. Jul. 16, 2013) ("The fact that plaintiff had not been hospitalized for a psychiatric crisis does not mean that his treatment was 'conservative' or that he could function in a normal working environment."); *Finn v. Astrue*, No. 11-1388, 2013 WL 501661, at *5 (C.D. Cal. Feb. 7, 2013) (lack of hospitalization was not a specific and legitimate reason to reject the ALJ's opined mental limitations); *Matthews v. Astrue*, No. 11-1075, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012) ("Claimant does not have to undergo inpatient hospitalization to be disabled"). Indeed, although plaintiff was not hospitalized, she was actively treated with therapy and medications. *See* AR at 318-23, 377, 445; *see also Finn*, 2013 WL 501661, at *5 (active psychotherapy and anti-depressants supported physician's opined limitations).

Further, contrary to the ALJ's determination, plaintiff did not perform well on mental status testing. Dr. Reading, Dr. Curtis, and Dr. Brawer all conducted a mental status examination and performed tests on plaintiff. With regard to the mental status examinations themselves, both Dr. Reading and Dr. Curtis noted that plaintiff was tearful or markedly depressed, had diminished cognitive functioning, and had concentration issues. AR at 325, 416. As for the psychological tests, Dr. Reading and Dr. Curtis performed psychological tests on plaintiff, which showed elevated levels of, inter alia, depression and anxiety. *See id.* at 326-28, 417-23. In contrast, Dr. Brawer performed memory and intelligence tests, which produced below average results. *See id.* at 281-82. Dr. Reading and Dr. Curtis's findings may have been inconsistent with Dr. Brawer's findings but they were not inconsistent with the record as a whole.

The ALJ also concluded that the treating physician's opinions were unsupported because plaintiff showed no signs of psychosis and there were no signs of *significant* behavioral and cognitive deficits. *Id.* at 31. Plaintiff can be disabled without suffering from an actual psychosis. As for significant behavioral and cognitive deficits, although both Dr. Reading and Dr. Curtis noted, inter alia, that plaintiff exhibited disorganized or diminished cognitive functioning, had poor concentration, and often sobbed during sessions (*see, e.g.*, *id.* at 321, 326, 353, 368, 416), there is also evidence to support the ALJ's conclusion that the deficits were not significant. *See, e.g., id.* at 274, 280-81, 325. Taken as a whole, however, the evidence does not support the ALJ's conclusion that the opinions of Dr. Reading and Dr. Curtis were unsupported by the record.

The ALJ's second reason for rejecting Dr. Reading's and Dr. Curtis's opinions was that the opinions were based primarily on plaintiff's subjective complaints. *Id.* at 31-32. As an initial matter, neither Dr. Reading nor Dr. Curtis based their opinions solely on plaintiff's subjective complaints. In his report, Dr. Reading indicated when plaintiff was tearful, appeared depressed, or was having trouble concentrating during their sessions, conducted an objective mental status examination, and performed psychological tests. *Id*. at 319-28. Dr. Curtis's treatment notes and reports indicated similar symptoms and test results. *See, e.g., id.* at 368, 417-23. To the extent that their opinions were based on plaintiff's subjective complaints, "an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Here, as discussed *infra*, the ALJ failed to properly discount plaintiff's complaints. As such, the ALJ cannot properly disregard Dr. Reading's and Dr. Curtis's opinions on the basis that they were based, in large part, on plaintiff's subjective allegations.

The ALJ also specifically discounted Dr. Reading's opinion on the basis that, other than Dr. Reading's report, there was no evidence that Dr. Reading was a treating source. AR at 27, 31. The ALJ correctly noted that the record contains none of Dr. Reading's treatment notes. *Id.* But the court disagrees that the report was insufficient to establish a treating relationship. Ordinarily, treatment notes would be necessary to establish a treating relationship. But in this instance, Dr. Reading indicated that he was a treating physician in the report, provided the dates of the visits, and appeared to summarize his treatment notes for each of the thirty-one consultations. The ALJ did not conclude that the summaries of the consultations were fabricated or did not support Dr. Reading's opinion. And particularly given the significant level of detail in Dr. Reading's report, there is no reason to believe that Dr. Reading fabricated those consultations. *See Lester*, 81 F.3d at 832 ("'The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.'") (citation omitted).

Moreover, plaintiff correctly notes that in its request to Dr. Reading, the Commissioner stated that "[a] narrative report, copies of your records, or completion of any attached forms are equally satisfactory." AR at 312. Dr. Reading, following the Commissioner's own instructions, provided a highly detailed narrative report that summarized each of plaintiff's visits. Nevertheless, plaintiff is not faultless. During the hearing, the ALJ noted the dearth of records, indicated that he wanted the treatment records, and gave plaintiff two weeks to obtain all the treatment records. *Id.* at 48-49, 53-54. Plaintiff only submitted additional records from Dr. Curtis. Although the court finds that the report adequately established a treating relationship, because this case will be remanded, on remand plaintiff should supply the ALJ with the treatment notes.

Finally, the ALJ specifically rejected Dr. Curtis's opinion because he was retained in relation to plaintiff's worker's compensation claim. *Id.* at 31. An ALJ may not reject a report solely on the basis that the source was a physician hired by

12

claimant for a worker's compensation claim. *Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996) (noting that the source of a report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for that opinion). In other words, the ALJ may not presume bias. *See Lester*, 81 F.3d at 832. An ALJ may reject a physician's ultimate disability assessment if made on worker's compensation grounds because the evaluation differs from the one conducted on social security grounds. *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002). But an ALJ may not reject the objective medical findings of a physician retained for a worker's compensation case. *See id.* at 1105 (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). Because there is no evidence of impropriety or bias, the ALJ improperly rejected Dr. Curtis's opinion on the basis that he was hired in relation to plaintiff's worker's compensation claim.[6]

Accordingly, the ALJ erred because she failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Reading's and Dr. Curtis's opinions.

**B.  The ALJ Failed to Give Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints**

Plaintiff complains that the ALJ failed to provide legally sufficient reasons for discounting her credibility. P. Mem. at 9-10. The court agrees.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[7] To determine whether testimony

---

[6] The ALJ correctly notes that plaintiff failed to provide the opinions of other examining physicians from her worker's compensation claim. On remand, the ALJ may seek those records.

[7] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because

concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

    At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 30. At the second step, because the ALJ did not find any evidence of malingering, the ALJ must provide clear and convincing reasons for finding plaintiff less credible. Here, the ALJ discounted plaintiff's credibility because: (1) of "highly inconsistent statements" concerning her daily activities; (2) conservative treatment; and (3) her demeanor at the hearing. *Id*. at 32. These reasons were not supported by substantial evidence.

    First, the ALJ determined that plaintiff made "highly inconsistent statements regarding her ability to perform daily living activities." *Id*. The ALJ noted that in

---

they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

contrast to her testimony that she had minimal ability to care for herself and perform household activities, she denied any such problems to Dr. Brawer and Dr. Michael S. Wallack, a consultative internist. *Id.* The record does not support the ALJ's conclusions. In May 2010, plaintiff reported to Dr. Wallack that she drove and did some light cooking and cleaning. *Id*. at 270. Plaintiff reported to Dr. Brawer in June 2010 that she could dress and bathe herself, did household chores, but did not cook, shop or, run errands. *Id.* at 280. At the hearing in June 2011, plaintiff testified that she barely cooks, does not shop, and drives only very short distances. *Id.* at 55-56. At most, these statements may be characterized as minor inconsistencies about how much cooking and driving plaintiff did, and certainly do not rise to the level of inconsistency required to discount her credibility. Moreover, plaintiff's statements are by and large consistent with other statements she made concerning her ability to perform daily activities. In a Function Report dated May 25, 2010, plaintiff stated that relatives helped with cooking, cleaning, and shopping, and she picked up her children from school but did not drive much otherwise. *Id.* at 183-89. Plaintiff reported to Dr. Curtis that she required assistance with daily chores, cooking, cleaning, and shopping. *Id.* at 218.

Second, the ALJ found that plaintiff only received conservative treatment, noting that there was "no credible evidence of regular usage of strong medication" and that she did not require inpatient psychiatric care or intensive outpatient therapy. *Id.* at 31-32. Evidence of conservative treatment may be sufficient to discount a claimant's credibility. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). But it is not clear that plaintiff's treatment was conservative. As discussed above, the fact that plaintiff had not been hospitalized suggests conservative treatment, but that fact alone is insufficient. *See, e.g., Kuharski*, 2013 WL 3766576, at *5; *Matthews*, 2012 WL 1144423, at *9 (finding that claimant's care was not conservative because although claimant was not hospitalized, he received outpatient care and took psychotropic medication). Here,

15

1 plaintiff was treated with several psychiatric medications since January 2009,
2 attended 31 sessions with a psychologist over a fifteen-month period, and saw a
3 psychiatrist on a monthly basis. AR at 319-23, 445. The strength of plaintiff's
4 medication, if low dosage, may indicate conservative treatment, but the record
5 only contains two references to medication dosages, neither of which supports the
6 ALJ's finding. *See id.* at 210, 339

7      Finally, the ALJ cited plaintiff's demeanor at the hearing as a basis for
8 finding her less credible. *Id.* at 32. The ALJ noted that plaintiff's thoughts did not
9 seem to wander and she answered all the questions appropriately and alertly. *Id.*
10 An ALJ may properly consider a claimant's demeanor in a credibility analysis.
11 *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). But an ALJ may not
12 reject a claimant's testimony on that ground alone. *Orn v. Astrue*, 495 F.3d 625,
13 639 (9th Cir. 2007). Because the ALJ's other reasons for discounting plaintiff's
14 credibility do not withstand scrutiny, plaintiff's hearing demeanor alone is
15 insufficient to support the ALJ's credibility finding.

16      Accordingly, the ALJ failed to provide clear and convincing reasons
17 supported by substantial evidence for discounting plaintiff's credibility.

**C.     The ALJ Must Reconsider Plaintiff's RFC**

19      Plaintiff argues that the ALJ's RFC determination was inconsistent with the
20 medical evidence. P. Mem. at 11-13. Specifically, plaintiff argues that the ALJ
21 failed to consider the opinions of the treating physicians. *Id.* at 11.

22      RFC is what one "can still do despite [his or her] limitations." 20 C.F.R.
23 § 404.1545(a)(1). The Commissioner reaches an RFC determination by reviewing
24 and considering all of the relevant evidence. *Id.*

25      As discussed above, the ALJ improperly rejected the opinions of Dr.
26 Reading and Dr. Curtis. The ALJ must reconsider the opinions of Dr. Reading and
27 Dr. Curtis, and if she credits them she must then reconsider plaintiff's RFC.

28

16

Plaintiff also contends that the ALJ misstated Dr. Tashjian's opinion, and that Dr. Brawer's opinion is not supported by substantial evidence. P. Mem. at 11. Plaintiff correctly notes that the ALJ omitted two of the moderate limitations that Dr. Tashjian opined. AR at 284-85. The court disagrees, however, that Dr. Brawer's opinion was not supported by substantial evidence because Dr. Brawer did not review plaintiff's medical records. An independent examination constitutes substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In any event, given the ALJ's error in rejecting the opinions of plaintiff's treating physicians, the ALJ must reconsider her RFC determination.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate Dr. Reading's and Dr. Curtis's opinions and plaintiff's credibility. The ALJ's RFC determination was also based on an improper rejection of Dr. Reading's and Dr. Curtis's opinions. On remand, the ALJ shall:

17

(1) reconsider the opinions provided by Dr. Reading and Dr. Curtis, and either credit their opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them; (2) reconsider plaintiff's subjective complaints and the resulting limitations, and either credit plaintiff's testimony or provide clear and convincing reasons for rejecting them; and (3) reconsider her RFC determination. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 18, 2013

SHERI PYM
United States Magistrate Judge